RECEIVED

JAN 0 8 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| MARY ARCENEAUX | CIVIL ACTION NO. 05-2040 |
| VS. | MAGISTRATE JUDGE METHVIN<br>BY CONSENT OF THE PARTIES |
| COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION | |

### MEMORANDUM RULING

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the court concludes that there is substantial evidence to support the Commissioner's finding. Accordingly, the Commissioner's decision is **AFFIRMED** and the case is **DISMISSED**.

*Background*

Born on January 31, 1963, Mary Arceneaux ("Arceneaux") is currently 43 years old. Arceneaux has a high school education and has worked in the past as the head custodian at a school.[1] On July 11, 2003, Arceneaux applied for disability and SSI benefits effective May 23, 2002, due to right shoulder injury, carpal tunnel syndrome, and breast cancer.[2] The application was denied initially and on reconsideration. Following an administrative hearing, an administrative law judge (ALJ) determined that Arceneaux had the residual functional capacity to perform a significant range of light level work which existed in substantial numbers, and therefore she was not disabled.[3] Arceneaux appealed the decision to the Appeals Council, which

---

[1] Tr. 65E.

[2] Tr. 65E.

[3] Tr. 15-28.

denied her request for review, making the ALJ's decision the final decision of the Commissioner from which Arceneaux now appeals.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

A person applying for disability and/or SSI benefits bears the burden of proving that he is disabled within the meaning of the Social Security Act, 43 U.S.C. §423(d). Initially, the burden is on the claimant to show that he cannot perform his previous work. Fraga v. Bowen, 810 F.2d 1296, 1301 (5th Cir.1987); Anthony, 954 F.2d at 293. Once the claimant satisfies his initial burden, the Secretary then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is therefore not disabled. Fraga, 810 F.2d at 1301-1302; Johnson v. Bowen, 864 F.2d 340, 344 (5th Cir.1988). In determining whether a claimant

is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the case at bar, the ALJ concluded that Arceneaux's lumbosacral neuritis, bilateral shoulder surgeries, and bilateral wrist surgeries are severe impairments.[4] The ALJ assessed Arceneaux's residual functional capacity ("RFC") and concluded that she could perform a significant range of light exertional work. Relying on the testimony of a vocation expert, the ALJ concluded that Arceneaux was not disabled because jobs exist that she could perform.

### *Assignment of Errors*

Arceneaux alleges the following errors: 1) the ALJ erred in failing to consider all of Arceneaux's impairments when assessing her RFC; and 2) the ALJ erred in discounting the opinion of her treating physician.

---

[4] Tr. 23.

## *Findings and Conclusions*

After a review of the entire record and the briefs of the parties, and pursuant to 42 U.S.C. §405(g), the court concludes that the Commissioner's findings and conclusions are supported by substantial evidence in the record.

## **Medical Records**

*Breast Cancer:* In 1997, Arceneaux was diagnosed with breast cancer. On November 14, 1997, she underwent a left breast mastectomy at the American Legion Hospital in Crowley, Louisiana.[5] On September 17, 2003, Arceneaux's oncologist, Dr. John M. Rainey, reported that, "As far as her breast cancer is concerned, she would have no significant disability at this time."[6]

*Upper Extremities:* On January 13, 2000, Arceneaux was examined by Dr. Phillip R. Bacilla, Jr., an orthopedist, for shoulder pain. Dr. Bacilla found that Arceneaux had A-C joint arthritis with possible rotator cuff tear.[7] Arceneaux began treatment with Physical Therapy Services of Church Point.[8] In February, 2000, Dr. Bacilla diagnosed Arceneaux with carpal tunnel syndrome on the left.[9] On April 16, 2000, Arceneaux underwent arthroscopy of her shoulder and carpal tunnel release on the left.[10] In November, 2000, Dr. Bacilla noted that

---

[5] Tr. 66-70.

[6] Tr. 191.

[7] Tr. 82, records from Dr. Mayeaux. The administrative record does not include all of Dr. Bacilla's records during this period.

[8] Tr. 116-181.

[9] Tr. 82.

[10] Tr. 82.

Arceneaux was doing a lot better, with her motion and strength being good.[11] Dr. Bacilla released Arceneaux to return to "some light duty but nothing real strenuous for now."[12]

Arceneaux returned to Dr. Bacilla on January 11, 2001, advising that her shoulder was doing well, and her main problem was her neck.[13] Dr. Bacilla noted some decreased range of motion of the neck and a tenderness over the right paraspinal region. Dr. Bacilla recommended that Arceneaux continue physical therapy, as well as light duty work.

On February 22, 2001, Arceneaux complained of occasional numbness in her right hand and fingers, and some neck pain.[14] Dr. Bacilla noted that Arceneaux may have carpal tunnel syndrome on the right. On March 16, 2001, Arceneaux had pain in the right shoulder and Dr. Bacilla found that Arceneaux had right rotator cuff tendonitis.[15] Dr. Bacilla injected the rotator cuff with nerve blocks. On March 23, 2001, Arceneaux was feeling a lot better, with good range of motion.[16] Dr. Bacilla recommended she return to light duty work. On May 4, 2001, Dr. Bacilla noted that Arceneaux was working full duty, having minimal discomfort, with good range of motion, and no irritation of her cuff. Dr. Bacilla found that Arceneaux had reached maximum medical improvement.[17] On November 26, 2001, Dr. Bacilla found Arceneaux to have recurrent carpal tunnel syndrome on the left and carpal tunnel syndrome on the right.

---

[11] Tr. 78.

[12] Tr. 78.

[13] Tr. 77.

[14] Tr. 76.

[15] Tr. 75.

[16] Tr. 74.

[17] Tr. 72.

On May 23, 2002, Arceneaux was examined by her family physician, Dr. Michael A. Felton, complaining of pain in her right wrist, hand, and shoulder.[18] Dr. Felton diagnosed bursitis in the right shoulder, tendinitis, and carpal tunnel syndrome, and recommended that she have an MRI performed. Arceneaux returned to Dr. Felton on May 30, 2002, with the same complaints, as well as pain in the low back.[19] Dr. Felton prescribed a topical pain relief gel, and Flexeril pain medication. On June 26, 2002, Dr. Felton wrote a letter to Arceneaux's workers' compensation carrier advising that Arceneaux suffered from severe carpal tunnel syndrome in her right upper extremity.[20] On August 19, 2002, Arceneaux complained of right hand pain, back pain, and left leg numbness.[21]

On January 6, 2003, Dr. Felton wrote a progress report to Arceneaux's workers' compensation carrier, advising that Arceneaux had undergone "thorough and aggressive investigation and treatment in the last year" and that she continued to experience pain in her hands with loss of dexterity.[22] Dr. Felton noted:

> Physical examination today is consistent with her various medical maladies with tenderness with palpation of the right shoulder. She is also tender bilaterally in the hands and wrist area with bilateral positive tennel signs. Grip strength is decreased for the patient at four over five bilaterally with pain on strong grip. She is tender in her lumbar spine at the L3-L4 area with guarding and a positive straight leg raise test.
>
> Our assessment at this point concurs with that of our surgical colleagues. The patient needs to complete whatever investigative studies that have been ordered by

---

[18] Tr. 254.

[19] Tr. 253.

[20] Tr. 250.

[21] Tr. 2493

[22] Tr. 242.

my consulting surgical colleagues and undergo surgical intervention as soon as possible.[23]

On March 28, 2003, Dr. Bacilla performed arthroscopic surgery on Arceneaux's right shoulder and right carpal tunnel release.[24] On October 8, 2003, Dr. Bacilla examined Arceneaux and noted that her shoulders had full range of motion. Dr. Bacilla stated, "I think she is at MMI at this time; however, she has a left trigger thumb, which is not related to her workers' comp. I think she will need at least 6-8 weeks to get over this, then we will proceed with a functional capacity evaluation at that time."[25] Dr. Bacilla recommended that Arceneaux undergo trigger thumb release surgery, which was performed on October 14, 2003.[26] On November 19, 2003, Dr. Bacilla noted that Arceneaux could move her thumb well, no catching, and she was doing well.[27] Dr. Bacilla found that Arceneaux could perform activities as tolerated. She was to return on an as needed basis.

On October 13, 2004, Arceneaux returned to Dr. Bacilla complaining of numbness in the middle finger of her left hand.[28] Dr. Bacilla found that she had slight decreased sensation in the middle finger. Dr. Bacilla recommended conservative treatment.

On December 15, 2004, Arceneaux was examined by Dr. Felton. Arceneaux complained of swelling in the left hand and knee pain.[29] Dr. Felton found that she had decreased grip

---

[23] Tr. 242.

[24] Tr. 91-93.

[25] Tr. 208.

[26] Tr. 198.

[27] Tr. 207.

[28] Tr. 206.

[29] Tr. 228.

strength in the left hand, and therefore, Dr. Felton recommended that she undergo a nerve conduction study.[30] On July 7, 2005, Arceneaux underwent a Electromyography and Nerve Conduction Study, which showed findings consistent with bilateral moderate carpal tunnel syndrome.[31]

On January 3, 2005, Arceneaux was examined at University Medical Center ("UMC") in Lafayette complaining of pain in her left wrist and hand.[32] An x-ray showed mild degenerative changes at the base of the left hand, but otherwise it was normal.[33] On March 22, 2005, Arceneaux was examined at UMC for hand pain and was referred to the hand clinic.

*Back:* On September 4, 2002, Arceneaux was examined by Dr. Luiz C. DeAraujo, a neurosurgeon.[34] Dr. DeAraujo recommended that Arceneaux have an MRI of the lumbosacral spine. On November 20, 2002, Dr. DeAraujo noted that the MRI suggested a herniated disc at L3-4, although the radiologist read the MRI as showing only degenerative changes. Due to the uncertainty, Dr. DeAraujo performed a lumbosacral myelogram and post-myelographic CAT scan, which did not show a herniated disc, but rather were unremarkable. Thus, Dr. DeAraujo concluded that Arceneaux's pain was myofascial.[35]

On October 23, 2002, Arceneaux was examined by M. Angela Mayeux, an orthopedist, at the request of Arceneaux's workers' compensation carrier.[36] Dr. Mayeux noted that Arceneaux

---

[30] Tr. 23.

[31] Tr. 262.

[32] 259-260.

[33] Tr. 258.

[34] Tr. 89.

[35] Tr. 87.

[36] Tr. 80-85.

was complaining of mid-back to tailbone pain, and carpal tunnel and shoulder pain. Arceneaux reported that she had 6 or 7 worker's compensation claims dating back to 1987 and that the worker's compensation carrier had grouped all of her files into one since an accident in November, 1995. Arceneaux reported that her back pain began when she had an unreported accident in 1999. Dr. Mayeux noted that on examination Arceneaux had full range of motion in both shoulders. Arceneaux had positive phalen and tinel signs on the right, indicating carpal tunnel syndrome,[37] but she had excellent strength bilaterally.[38] Arceneaux had a tender point in her back at L4-5 and bilateral SI joints, but no spasm. Dr. Mayeux concluded:

> IMPRESSION AT THE TIME OF EVALUATION: Status post multiple work related injuries dating to 1987 with the following positive findings on physical examination: #1 – Right rotator cuff impingement tendonitis. #2 – Right sided carpal tunnel syndrome. #3 – Pain in her lateral three digits on the left hand side, but no symptoms consistent with carpal tunnel syndrome. #4 – A dropped knee reflex on the left with quadriceps weakness on the left and atrophy in the left leg. #5 – Bilateral sacroilititis.[39]

\*\*\*

> As far as returning to custodial work, I think this lady has had multiple worker's comp related injuries and continues to be injured. I would not recommend that she be returned to work as a custodian. After her surgical procedures are completed, I would recommend that she have a Functional Capacity Evaluation and be returned to work at an appropriate duty level.[40]

On April 29, 2003, Arceneaux was examined by Dr. Joseph T. Gillespie, an anesthesiologist who specializes in pain management.[41] Arceneaux complained of low back

---

[37] See http://www.gpnotebook.co.uk/cache/1812332556.htm and http://www.medterms.com/script/main/art.asp?articlekey=16687.

[38] Tr. 84.

[39] Tr. 81.

[40] Tr. 80.

[41] Tr. 113-114.

pain. Dr. Gillespie noted that Arceneaux moved all extremities, walked without difficulty, and had no sensory defects. Dr. Gillespie diagnosed degenerative disc disease with lumbosacral neuritis. On June 19, 2003, Arceneaux underwent a caudal epidural steroid injection to help alleviate the pain associated with lumborsacral neuritis.[42]

On September 16, 2003, Arceneaux underwent a steroid injection in her back.[43] On December 9, 2003, Dr. Gillespie examined Arceneaux and noted that Arceneaux had a good result from the injection. Dr. Gillespie recommended that Arceneaux continue taking pain medication and return to see him in four months. On April 6, 2004, Arceneaux indicating that she was doing well and that the pain eased up.[44] Dr. Gillespie found that she was at MMI and her work status was light duty and occasionally medium. On August 31, 2004, Arceneaux reported that she had leg numbness.[45]

*Physicians' Reports of Disability:* On August 8, 2003, Dr. Gillespie completed a Physician's Report of Disability at the request of the Louisiana School Employees' Retirement System, in which he indicated that Arceneaux was not able to perform her regular duties as a head custodian and that "Pt [patient] limited to light duty only."[46] Dr. Bacilla also completed a Physician's Report of Disability indicating that Arceneaux's prognosis is fair, but that she was permanently disabled from performing her regular job duties.[47] Dr. Felton also completed a

---

[42] Tr. 112.

[43] Tr. 204.

[44] Tr. 202.

[45] Tr. 201.

[46] Tr. 193.

[47] Tr. 194.

Physician's Report of Disability, in which he stated, "I anticipate further deterioration in her overall condition."[48] Dr. Felton also indicated that Arceneaux was permanently disabled from performing her regular job duties.

*Administrative hearing:* Arceneaux testified that she is unable to work because her legs give out on her, she has back problems, shoulder problems, and numbness in her hands.[49] She takes Bextra[50], Flextra[51], Ultram[52], and Evista.[53] She prepares meals for her family, does laundry, grocery shops, and pays bills.[54] She can bend to tie her shoe laces sometimes and she can carry light bags. Repetitive reaching bothers her shoulders.[55] She only has problems with her left hand now.[56]

## Issue No. 1: Consideration of all impairments

Arceneaux maintains that the ALJ failed to consider all of her impairments and functional limitations when he assessed her RFC. Specifically, Arceneaux argues that the ALJ did not consider her "severe bilateral sacroiliitis, myofascial pain syndrome, severe degenerative disc

---

[48] Tr. 196.

[49] Tr. 279.

[50] An anti-inflammatory pain medication. See http://www.drugs.com/bextra.html

[51] A non-aspirin pain reliever. See http://www.drugs.com/mtm/f/flextra.html

[52] A pain reliever. See http://www.drugs.com/mtm/u/ultram.html

[53] An osteoporosis medication. See http://www.drugs.com/mtm/e/evista.html

[54] Tr. 281.

[55] Tr. 291.

[56] Tr. 291.

disease of the lumbar spine, lumbar osteoarthritis, chondromalacia in her knees, and left thumb trigger finger."[57]

The Fifth Circuit uses the following standard in determining whether a claimant's impairment is severe: "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985), citing Estran v. Heckler, 745 F.2d 340, 341 (5th Cir.1984). *See also* Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984); Martin v. Heckler, 748 F.2d 1027, 1032 (5th Cir.1984); Davis v. Heckler, 748 F.2d 293, 296 (5th Cir.1984). If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability. 20 C.F.R. §§ 404.1530, 416.930; Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir.1987).

In the instant case, the ALJ concluded that Arceneaux suffered from the following severe impairments: lumbosacral neuritis,[58] bilateral shoulder surgeries, and bilateral wrist surgeries.[59] The ALJ also analyzed the medical evidence relating to the other back impairments complained of by Arceneaux: bilateral sacroiliitis,[60] myofascial pain syndrome, severe degenerative disc disease of the lumbar spine, and lumbar osteoarthritis.[61] Although it is true that the ALJ did not list these impairments separately in his "list of severe impairments," it is clear that he considered them. The "omitted" back impairments posed the same limitations as the impairments found to

---

[57] Rec. Doc. 9 at p. 4.

[58] Inflamation of the nerves in the low back. See www.medterms.com/script/main/art.asp?articlekey=4549

[59] Tr. 23.

[60] Sacroiliitis causes low back pain. See www.mayoclinic.com/health/sacroiliitis/DS00726

[61] Lumbar osteorthritis causes low back pain. See www.spine-health.com/topics/cd/osteound/osteound02

be severe – low back pain and leg numbness. Since the ALJ's severity analysis included the low back impairment which posed the same functional limitations as the bilateral sacroiliitis, myofascial pain syndrome, severe degenerative disc disease of the lumbar spine, and lumbar osteoarthritis, he was not required to list these impairments. With regard to Arceneaux's knees and left thumb trigger finger, the undersigned notes that Arceneaux had few medical visits concerning her knees and her left thumb trigger finger resolved shortly after surgical intervention. Arceneaux has not shown how these impairments affect her ability to work.

Additionally, the ALJ did not stop the disability analysis at Step 2, which would have been the case if he had found that Arceneaux did not have a severe impairment. Because the Fifth Circuit has already declined to extend the Stone decision to cases that were not decided at Step 2 on the basis of non-severity, Arceneaux's contention has no merit. See, e.g., Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987) (where ALJ concluded that appellant's hypertension was of "mild medical severity," and proceeded through the sequential evaluation to conclude at the fourth and fifth steps that the appellant could perform past relevant work and a full range of light work, the court held that the ALJ did not apply an incorrect severity standard at Step 2).

Moreover, the ALJ's RFC analysis addressed the medical evidence and the effect all of the impairments had on Arceneaux's ability to work. The ALJ concluded that Arceneaux retained the RFC to "lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for at least 6 hours of 8; sit for at least 6 hours of 8; no over the shoulder work; no work requiring extreme wrist motion (over 90%) bilaterally."[62] Although Arceneaux argues that the ALJ did not consider all of her impairments, she fails to identify what limitations are posed by her impairments which are not included in the ALJ's RFC or how these impairments in

---

[62] Tr. 25.

combination with her other impairments caused her to be disabled. Accordingly, substantial evidence of record supports the ALJ's RFC assessment.

**Issue No. 2: Dr. Felton's opinion**

Arceneaux maintains that the ALJ erroneously discounted Dr. Felton's opinion that she was permanently disabled and that her condition would continue to deteriorate.[63]

The ALJ is entitled to determine the credibility of the examining physicians and medical experts and to weigh their opinions accordingly. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994). Although the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." Martinez v. Chater, 64 F.3d 172, 175-176 (5th Cir. 1995), quoting, Moore v. Sullivan, 919 F.2d 901, 905 (5th cir. 1990). "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Id. quoting, Bradley v. Bowen, 809 F.2d 1054, 1057 (5th Cir. 1987). Further, the ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). The ultimate issue of disability is reserved to the Commissioner. The opinion of a treating physician on this issue is not entitled to controlling weight, although it should be given appropriate weight depending on whether it is supported by the medical record. 20 C.F.R. Sec. 416.927 (e) (1988).

As noted above, Dr. Felton completed a Physician's Report of Disability, in which he stated that he thought Arceneaux's condition would deteriorate and that she was permanently disabled from performing her regular job duties.[64] The ALJ discounted this finding by referring

---

[63] Rec. Doc. 9 at p. 6.

[64] Tr. 196.

to the disability reports completed by Drs. Bacilla and Gillespie and stating that "Dr. Felton's notes do not agree with the specialists involved here."[65] A review of the reports of the three doctors shows that they all agreed that Arceneaux could not return to her work as a head custodian. The only difference is that Dr. Felton's report also stated his opinion regarding the deterioration of Arceneaux's condition. Dr. Felton, however, did not explain the basis for his opinion that Arceneaux's condition would deteriorate, nor did he state whether the deterioration would affect Arceneaux's ability to perform work.

In fact, the record does not contain any medical report indicating that Arceneaux could not work – Dr. Felton and the other physicians only indicated that Arceneaux could not return to her past work as a head custodian. The ALJ concurred in that assessment. Moreover, Dr. Bacilla, Arceneaux's treating surgeon, indicated in his report on October 8, 2003 that her shoulders had full range of motion and that she was at MMI. Further, on November 19, 2003, Dr. Bacilla released Arceneaux without restriction except that she should perform activities as tolerated. Therefore, the records of Arceneaux's surgeon support the ALJ's decision to discount Dr. Felton's opinion concerning Arceneaux's condition deteriorating. Moreover, the records support the ALJ's conclusion that Arceneaux could return to work with some limitations, i.e., light work with modifications for reaching. Accordingly, there is substantial evidence supporting the ALJ's decision.

---

[65] Tr. 21.

## *Conclusion*

Considering the foregoing, the decision of the Commissioner is **AFFIRMED** and the case is **DISMISSED**.

Signed at Lafayette, Louisiana on January 8, 2007

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)